## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JOSE R. SOTO VILLANUEVA
JOCELINE ORTIZ POLACO
ERIC NIEVES
CARMEN MALDONADO

Plaintiffs

v.

LUNA CHICA, LLC.

Defendant

Civil No. 23-01043

Re: Willful Violation of the Discharge
Injunction; Violation of the Fair
Debt Consumer Protection Act;
Actual and Punitive Damages

## CLASS ACTION COMPLAINT

**COMES NOW,** Plaintiffs, **José R. Soto Villanueva and Joceline Ortiz Polaco, Plaintiff Eric Nieves, Plaintiff Carmen Maldonado** on behalf of themselves and pursuant to Rule 23 of the Federal Rules of Civil Procedure all others similarly situated (collectively, "Plaintiff" and/or "Plaintiffs"), through the undersigned counsel, and before this Honorable Court respectfully **STATES**, **ALLEGES** and **PRAYS** as follows:

### I.      INTRODUCTION

1.      This action seeks redress for the unlawful and deceptive practices committed by the Defendant in connection with its efforts to collect a debt, previously discharged in bankruptcy, against Plaintiffs and others similarly situated. Defendant, individually and/or collectively, engaged in unlawful and deceptive collection practices in violation of the Discharge Injunction and the Fair Debt Collection Practice Act ("FDCPA").

2.      The Plaintiffs request declaratory and injunctive relief, as well as monetary, and punitive and actual damages based on violations of 15 U.S.C. §1692.

1

## II.    JURISDICTION AND VENUE

3.    Jurisdiction is invoked under the provision 28 U.S.C. §1331 and 15 U.S.C. §1692(k)(d).

4.    Venue is proper in this District because all the events and omissions giving rise to the claims asserted in the Complaint occurred within this judicial district. In addition, Defendant does business in this District.

## III.    THE PARTIES

5.    Plaintiffs, **José R. Soto Villanueva and Joceline Ortiz Polaco**, are citizens of the Commonwealth of Puerto Rico, residing in the municipality of Canovanas, Puerto Rico (hereinafter, and collective, "Plaintiffs" and/or "Plaintiff Soto").  Plaintiffs are a "consumer" as such term is defined by the FDCPA.  Therefore, Plaintiffs Soto have standing to appear as "**Plaintiffs**" in this action.

6.    Plaintiff, **Eric Nieves Lopez** is a citizen of the Commonwealth of Puerto Rico, residing in the municipality of Bayamon, Puerto Rico (hereinafter, "Plaintiff" and/or "Plaintiff Nieves").  Plaintiff is a "consumer" as such term is defined by the FDCPA.  Therefore, Plaintiff Nieves has standing to appear as "**Plaintiffs**" in this action.

7.    Plaintiff, **Carmen Maldonado Delgado** is a citizen of the Commonwealth of Puerto Rico, residing in the municipality of Las Piedras, Puerto Rico (hereinafter, "Plaintiff" and/or "Plaintiff Maldonado").  Plaintiff is a "consumer" as such term is defined by the FDCPA. Therefore, Plaintiff Maldonado has standing to appear as "**Plaintiff**" in this action.

8.    Defendant, **LUNA CHICA, LLC.**  (hereinafter referred as "**LUNA**" or "**Defendant**") is a Limited Liability Company incorporated under the laws of the Commonwealth of Puerto Rico with a principal office address of:  Citi Tower, 252 Ponce De Leon Ave., Floor 20,

San Juan, PR 00918. Defendant is in the business of collecting consumer debts. That is, one of the principal purposes of Defendant's business is the acquisition of defaulted consumer debts and the collection of those debts. The business of debt collection is one of Defendant's primary businesses; in other words, but for its debt collection business Defendant's business operations would be severely impacted. Defendant does not originate any debt of its own. To the contrary, over the last few years Defendant has purchased millions of dollars of defaulted consumer debt with the primary purpose of collection on such purchased debts. Defendant's business is conducted by and through the use of interstate communication such as US Mail, electronic communications (e-mails, electronic payments), and telephone communications. As such, Defendant is a debt collector as such term is defined in 15 U.S.C. §1692a(6).

9.      Defendants, **Insurance Companies ABC**, are the insurance companies of the Defendant in this adversary proceeding who are liable for the acts against the Plaintiffs and are therefore responsible for the damages and acts alleged in this complaint.

10.     Defendants, **John Doe and Jane Doe,** are fictitious names for unknown persons who participated in the act and omissions against Plaintiffs and/or who are successors of Defendants, all responsible for the damages suffered by the Plaintiffs.

## IV.    THE FACTS

### a.    Facts as to Plaintiffs Jose R Soto and Joceline Ortiz Polaco

11.     Plaintiffs re-allege each and every previous allegation as if fully established herein.

12.     On October 29, 2016, Plaintiffs filed a voluntary petition under Chapter 13 of the Bankruptcy Code. *See,* Dk. #1 on the Bankruptcy case No. 16-08627-ESL13 (hereinafter referred to as the "Soto Bankruptcy Case").

13.     Banco Santander Puerto Rico (hereinafter referred as "Santander") received constructive and actual knowledge of Plaintiff's Bankruptcy petition.  *See*, Dk. #1 on Bankruptcy Case; *see also*, Dk. #7, Certificate of Service, on the Bankruptcy Case; *see also*, Proof of Claim #5.

14.     During the pendency of the Bankruptcy Case, Santander did not file any proceedings to declare the Bankruptcy Account "non dischargeable" pursuant to 11 U.S.C. § 523 et seq.

15.     After all due procedural events, on October 18, 2021, the Bankruptcy Court entered the Discharge Order in the Bankruptcy Case (hereinafter referred as "Discharge Order"). *See,* Dk. #93 on the Bankruptcy Case.

16.     By operation of law, the Discharge Order activated the Discharge Injunction under Section 524 of the Bankruptcy Code which discharged the Debtor from the personal debt and obligation alleged in the Bankruptcy Account and/or Proof of Claim #5.  Accordingly, upon Discharge, Santander and/or its successors in interest, were required pursuant to 11 U.S.C. § 727 to stop any collection attempts against the Plaintiffs, directly or indirectly, on the Bankruptcy Account.

17.     The Discharge Order was notified to all creditors and parties in interest in the Bankruptcy Case; including Santander. *See, e.g., Certificate of Service,* Dk. #94 on the Bankruptcy Case.

18.     The Discharge Order is a publicly available document that forms part of the documents, publicly available, related to the Soto Bankruptcy Case.

19.     Sometime after the filing of the Bankruptcy Case, but prior to February 1, 2022, Santander sold and transferred its allege claims against Plaintiff Soto to Luna Chica.

20.    Luna Chica, as successor in interest to Santander, was subject to the Discharge Order.

21.    Even after the Discharge Order issued by the Bankruptcy Court, and notwithstanding having actual or constructive knowledge of the Discharge Order and that the Bankruptcy Account had been discharged in the Bankruptcy Case, Luna Chica, LLC. (hereinafter referred as "Luna") continued with collection efforts, as to the Bankruptcy Account, against the Plaintiffs by sending communications, as such term is defined by the FDCPA, attempting to collect on the now discharged Bankruptcy Account.

22.    On or about February 1, 2022, Luna Chica sent Plaintiffs a collection letter (hereinafter referred as the "Demand Letter") which demanded payment on the Bankruptcy Accounts.

23.    The Demand Letter informed the Plaintiffs that the Bankruptcy Account "remain in full force and effect and are now enforceable" by Luna Chica.

24.    Luna Chica's Demand Letter advised Plaintiffs to send "[a]ll future payments of interest, principal, or other charges payable by you under the Personal Loan shall be made payable to the Servicer and shall be sent to the Servicer…"

25.    The "Servicer" was identified as an entity working for Luna Chica.

**b. <u>Facts as to Plaintiff Eric Nieves Lopez</u>**

26.    Plaintiffs re-allege each and every previous allegation as if fully established herein.

27.    On April 12, 2017, Plaintiffs filed a voluntary petition under Chapter 7 of the Bankruptcy Code. *See,* Dk. #1 on the Bankruptcy case No. 17-02550 (hereinafter referred to as the "Nives Bankruptcy Case").

28.     Banco Santander Puerto Rico (hereinafter referred as "Santander") received constructive and actual knowledge of Plaintiff's Bankruptcy petition. *See*, Dk. #1 on Bankruptcy Case; *see also*, Dk. #6, Certificate of Service, on the Bankruptcy Case.

29.     During the pendency of the Bankruptcy Case, Santander did not file any proceedings to declare the Bankruptcy Account "non dischargeable" pursuant to 11 U.S.C. § 523 et seq.

30.     After all due procedural events, on July 7, 2017, the Bankruptcy Court entered the Discharge Order in the Bankruptcy Case (hereinafter referred as "Discharge Order"). *See,* Dk. #22 on the Bankruptcy Case.

31.     By operation of law, the Discharge Order activated the Discharge Injunction under Section 524 of the Bankruptcy Code which discharged the Debtor from the personal debt and obligation alleged in the Bankruptcy Account. Accordingly, upon Discharge, Santander and/or its successors in interest, were required pursuant to 11 U.S.C. § 727 to stop any collection attempts against the Plaintiffs, directly or indirectly, on the Bankruptcy Account.

32.     The Discharge Order was notified publicly and privately to all creditors and parties in interest, including Santander. *See,* Dk. #24, Certificate of Service, on the Bankruptcy Case.

33.     Sometime after the filing of the Nieves Bankruptcy, but before February 1, 2022, Luna Chica acquired the alleged claim against Nieves from Santander.

34.     Luna Chica, as successor in interest to Santander, was subject to the Discharge Order.

35.     The Discharge Order is a publicly available document that forms part of the documents, publicly available, related to the Nieves Bankruptcy Case.

36.    Even after the Discharge Order issued by the Bankruptcy Court, and notwithstanding having actual or constructive knowledge of the Discharge Order and that the Bankruptcy Account had been discharged in the Bankruptcy Case, Luna Chica, LLC. (hereinafter referred as "Luna") continued with collection efforts, as to the Bankruptcy Account, against the Plaintiffs by sending communications, as such term is defined by the FDCPA, attempting to collect on the now discharged Bankruptcy Account.

37.    On or about February 1, 2022, Defendant sent Plaintiffs a collection letter (hereinafter referred as the "Demand Letter") which demanded payments on the Bankruptcy Accounts.

38.    The Demand Letter informed the Plaintiffs that the Bankruptcy Account "remain in full force and effect and are now enforceable" by Luna Chica.

39.    Luna Chica's Demand Letter requested that Plaintiffs send "[a]ll future payments of interest, principal, or other charges payable by you under the Personal Loan shall be made payable to the Servicer and shall be sent to the Servicer…"

40.    The "Servicer" was identified as an entity working for Luna Chica.

###    c.    Facts as to Plaintiff Carmen Milagros Maldonado Delgado

41.    Plaintiffs re-allege each and every previous allegation as if fully established herein.

42.    On August 2, 2019, Plaintiffs filed a voluntary petition under Chapter 13 of the Bankruptcy Code. *See,* Dk. #1 on the Bankruptcy case No. 19-04425 (hereinafter referred to as the "Maldonado Bankruptcy Case").

43.    Banco Santander Puerto Rico (hereinafter referred as "Santander") received constructive and actual knowledge of Plaintiff's Bankruptcy petition; *See*, Dk. #1 on Bankruptcy

Case; *see also*, Dk. #8, Certificate of Service, on the Bankruptcy Case, and see also, Proof of Claim #5.

44.    During the pendency of the Bankruptcy Case, Santander did not file any proceedings to declare the Bankruptcy Account "non dischargeable" pursuant to 11 U.S.C. § 523 et seq.

45.    After all due procedural events, on August 24, 2021, the Bankruptcy Court entered the Discharge Order in the Bankruptcy Case (hereinafter referred as "Discharge Order"). *See,* Dk. #44 on the Bankruptcy Case.

46.    By operation of law, the Discharge Order activated the Discharge Injunction under Section 524 of the Bankruptcy Code which discharged the Debtor from the personal debt and obligation alleged in the Bankruptcy Account and/or Proof of Claims #1 and #2.   Accordingly, upon Discharge, Santander and/or its successors in interest, were required pursuant to 11 U.S.C. § 727 to stop any collection attempts the Plaintiffs, directly or indirectly, on the Bankruptcy Account.

47.    The Discharge Order was notified publicly and privately to all creditors and parties in interest; including Santander.

48.    On August 26, 2021, the Clerk of the Bankruptcy Court filed a Certificate of Notice (the "Certificate of Service as to Discharge Order"). In the Certificate of Service as to Discharge Order Mr. Joseph Speetjens declared, under penalty of perjury, that a copy of the Order of Discharge was mailed to Santander.  *See,* Dk. #46 on the Bankruptcy Case.

49.    Sometime after the filing of the Bankruptcy Case, but before February 1, 2022, Luna Chica acquired the alleged claims against Plaintiff Maldonado from Santander.

50.    Luna Chica, as successor in interest to Santander, was subject to the Discharge Order.

51.     The Discharge Order is also a publicly available document that forms part of the documents, publicly available, related to the Maldonado Bankruptcy Case.

52.     Even after the Discharge Order issued by the Bankruptcy Court, and notwithstanding having actual and constructive knowledge of the Discharge Order and that the Bankruptcy Account had been discharged in the Bankruptcy Case, Luna continued with collection efforts, as to the Bankruptcy Account, against the Plaintiffs by sending communications, as such term is defined by the FDCPA, attempting to collect on the now discharged Bankruptcy Account.

53.     On or about February 1, 2022, Defendant sent Plaintiffs a collection letter (hereinafter referred as the "Demand Letter") which demanded payment on the Bankruptcy Accounts.

54.     The Demand Letter informed the Plaintiffs that the Bankruptcy Account "remain in full force and effect and are now enforceable by" Luna Chica.

55.     The Demand Letter requested that Plaintiffs send "[a]ll future payments of interest, principal, or other charges payable by you under the Personal Loan shall be made payable to the Servicer and shall be sent to the Servicer…"

56.     The "Servicer" was identified in the Demand Letter as an entity working for Luna Chica.

   **d**. **Allegations as to the Applicability of the FDCPA.**

57.     The FDCPA defines the term "debt collector" as including: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." *See*, 15 U.S.C. §1692a(6).

9

58.     The Plaintiff is a natural person allegedly obligated to pay a debt; he is an individual and otherwise a 'Consumer' as such term is defined by 15 U.S.C. §1692a(3).

59.     The Debt is a "debt" as defined by 15 U.S.C. §1692a(5) as it was incurred for personal, family, or household purposes.

60.     Defendant Luna is a legal person who regularly use means of interstate commerce such as US Mail, telephone calls, internet, e-mails, text messages, amongst others, to engage and conduct their business of debt collection.

61.     Defendant Luna is in the business of purchasing and collecting on defaulted consumer loans.   One of the principal purposes of Defendant Luna's business is the collection of any debts.  In fact, Defendant Luna does not originate and/or generate any of its own loans; rather, one of the principal purposes of Defendant Luna's business is to acquired defaulted debts and attempt collection on such debts.

62.     The Bankruptcy Accounts which are the object of this Complaint, to wit, the Bankruptcy Account of Plaintiff Soto, the Bankruptcy Account of Plaintiff Nieves, and the Bankruptcy Account of Plaintiff Maldonado, were all discharged (i.e., defaulted) debts acquired by Luna to make collection on such debts.

63.     The Bankruptcy Accounts which are the object of this Complaint are just a few examples of the thousands of other defaulted accounts acquired by Luna for collection purposes.

64.     The Bankruptcy Accounts which are the object of this Complaint, to wit, the Bankruptcy Account of Plaintiff Soto, the Bankruptcy Account of Plaintiff Nieves, and the Bankruptcy Account of Plaintiff Maldonado, were – allegedly – owed to Defendant Luna.

65.     Defendant Luna is a "debt collector" under the FDCPA, 15 U.S.C. § 1692(a)(6).

66.    The February 1, 2022 debt collection letter sent by Defendant to Plaintiff Soto, Plaintiff Nieves, and Plaintiff Maldonado (collectively, all February 1, 2022 Letters are referred hereinafter, as the "February 1 2022 Letter"), were the "Initial Communication" as such term is defined under the FDCPA.

67.    The February 1, 2022 Letter was a "communication" as such term is defined under the FDCPA.  In other words, the February 1 2022 Letters conveyed information regarding a debt. *See*, *e.g*., Hart v. FCI Lenders Services, Inc., 2015 WL 4745349 (2ND. Cir. 2015)(a transfer-of-servicing letter is a "communication" under the FDCPA); *see also*, Baptiste v. Carrington, 2017 U.S. Dist. Lexis 103609 (E.D.N.Y. 2017)(a Notice of Transfer of Servicing, constitutes a "communication" in connection with the collection of a debt).

## V.    COUNT I – VIOLATION OF 15 U.S.C. §1692e

68.    Plaintiff re-alleges each and every previous allegation as if fully established herein.

69.    Plaintiff brings Count I on her own behalf and on behalf of others similarly situated.

70. *15 U.S.C. § 1692e(11)* provides as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> …
> (11)    The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that     the communication is     from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

*See,* 15 U.S.C. § 1692e(11).

71.     Section 1692e(11) incorporate two separate and distinct mandates upon debt collectors. First, in the "***initial communication***" the debt collector must disclose that: (a) the communicating party is a "debt collector," and (b) the communicating party "is attempting to collect a debt and that any information will be used for that purpose". *See*, 15 U.S.C. § 1692e(11), *supra*. Second, in any "***subsequent communications***" the debt collector must disclose that the "communication is from a debt collector". Id.

72.     The FDCPA mandates strict compliance with its disclosure requirements of 1692e(11). *See*, Masciarelli v. Boudreau & Associates, 529 F.Supp.2d 183 (D. Mass. 2007) ("a collection agent must follow the disclosure requirement of identifying himself as a debt collector in all communication...").

73.     Pursuant to the mandates of 1692e(11) of the FDCPA, in the February 1 Letter, Defendant was obligated to disclose to Plaintiffs, clearly and effectively, that it was a "debt collector."

74.     The February 1 Letter was the "Initial Communication" as such term is defined by the FDCPA.

75.     The February 1 Letter, i.e., the "Initial Communication," failed to disclose to Plaintiff the purpose and/or that Defendant was acting as "debt collector" seeking to "collect on a debt."

76.     Defendant's failure to clearly and effectively convey its identity as a "debt collector" violated Section 1692e(11).

77.     As a result of Defendant violation of Section 1692e(11) Plaintiffs were not advised, as is required by law, that they were entitled to dispute the debt.

78.    Because of Defendant's violation of Section 1692e(11), Plaintiffs did not dispute a debt which he did not owe.

79.    As a result of Defendant's violation of Section 1692e(11), Plaintiffs suffered tangible and intangible injuries.

80.    Amongst Plaintiffs' tangible injuries: (b) Plaintiffs suffered economic harm by and through having to obtained legal representation to provide legal advice as to the February 1 Letter, something which would not have been required had Defendant accurately provided Plaintiffs with the disclosure required by Section 1692e(11) of the FDCPA, and (b) Plaintiffs suffered severe emotional harm that resulted from learning from being informed about the alleged debt, without the concurrent disclosure that such allegations could be disputed.

81.    But for Defendant's failure to comply with Section 1692e(11), Plaintiffs would have known that the alleged debts were subject to dispute.

82.    Additionally, Plaintiffs suffered intangible injuries.  Amongst others, the confusion and contradiction created by misinformation provided by Defendant in the debt collection process.

83.    Congress mandated that the Section 1692e(11) information be conveyed with the Initial Communication, so Plaintiffs would understand from the outset the adversarial relationship of the debt collector and thus preserve in time Plaintiff's debt validation rights.

84.    Defendant's failure to advise Plaintiffs that they were acting as a debt collector, violated Section 1692e(11).

85.    As a result of CICA's conduct, Plaintiff is entitled to an award of statutory damages pursuant to *15 U.S.C. §1692k*.

86.    As a result of CICA's conduct, Plaintiffs are entitled to an award of costs and attorney fees pursuant to *15 U.S.C. §1692k*.

## VI.    COUNT II – VIOLATION OF SECTION 1692g.

87.    Plaintiffs re-allege each and every previous allegation as if fully established herein.

88.    Plaintiffs bring Count II on his own behalf and on behalf of others similarly situated.

89.    Section 1692g expressly requires all debt collectors to communicate certain information to every consumer.  Pursuant to *15 U.S.C §1692g(a)* the Defendant must provide Plaintiff, amongst others, with the following information:

> (a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing-
>
> (2) The name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, **is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification** or judgment will be mailed to the consumers by the debt collector;

*See, 15 U.S.C §1692g(a)* (Emphasis added).

90.    The Section 1692g(a) language, "commonly referred to as a 'validation notice,' gives the consumer the information necessary to challenge the debt allegedly owed before making payment."  *See*, Russell v. Equifax A.R.S., 74 F.3d 30, 32-33 (2d Cir. 1996).

91.     It is settled that the "[Seventh] and other circuits have long interpreted *§1692g* to require that the mandatory disclosures be made so that they would be clearly understood by unsophisticated debtors." *See*, Steffek v. Client Servs., Inc. 948 F.3d 761 (7th Cir. 2020).

92.     Accordingly, "[i]t is not enough for a debt collection agency simply to include the property debt validation notice in a mailing to a consumer [rather] Congress intended that such notice be clearly conveyed." *See*, Graziano v. Harrison, 950 F.2d 107, 111 (3rd Cir. 1991).

93.     A letter in the form represented by February 1 letter was the 'initial communication' utilized by Defendant (hereinafter, the "Initial Communication").

94.     The Initial Communication is a template and a form letter which - in identical form and substance - is mailed to all consumers from whom Defendant attempts to collect as an 'initial communication.'

95.     Pursuant to the mandates of 1692g(a)(2) of the FDCPA, Defendant's Initial Communication is obligated to clearly convey to Plaintiff "[t]he name of the creditor to whom the debt is owed."

96.     Pursuant to the mandates of 1692g(a)(3) of the FDCPA, Defendant's Initial Communication was obligated to clearly convey to Plaintiff that Plaintiff had the right to dispute the validity of the debt during the period commencing on the date of receipt of the Initial Communication and ending on the 30th day thereafter.

97.     Pursuant to the mandates of 1692g(a)(4) of the FDCPA, Defendant's Initial Communication was obligated to clearly convey to Plaintiffs that the period to dispute the debt, under 1692g(a)(4), expired on the 30th the day **after receipt** of the Initial Communication.

98.     Defendant's Initial Communication, i.e., the February 1 Letter, failed to clearly convey to Plaintiff the disclosures required by 1692g(a)(1), 1692g(a)(2), 1692g(a)(3), or 1692g(a)(4) of the FDCPA.

99.     The Initial Communication violated 15 U.S.C. §§§§ 1692g(a)(1), 1692g(a)(2); 1692g(a)(3); and 1692g(a)(4), respectively.

100.     The result of Defendant's violation of Section 1692g, lead Plaintiffs to mistakenly believe that he could not dispute the debt without the assistance of counsel.

101.     As a result of Defendant violation of Section 1692g, Plaintiffs suffered tangible and intangible injuries.

102.     Amongst Plaintiffs tangible injuries: (a) Plaintiffs suffered severe emotional harm that resulted from Plaintiffs' belief that they would need to pay for debts without first having the opportunity to dispute and confirm such debts; and (b) Plaintiffs suffered economic harm in the cost of time and money invested researching how to avoid the impending legal and economic consequences that would result from the failure to pay the debts demanded on the February 1 Letter.

103.     But for the failure of Defendant to comply with Section 1692g, Plaintiffs would have known that the debt alleged in the February 1 Letter could be disputed via a simple expression, thus, saving themselves the severe emotional distress as well as the economic harm of researching and investigating alternatives.

104.     Additionally, Plaintiffs suffered intangible injuries.  Amongst others, the confusion created by Defendant's failure to comply with Section 1692g exposed Plaintiffs to the risk of having to pay a debt without having the opportunity to disputes the same; precisely, the type of harm Congress intended to prevent via the FDCPA.

105.    As a result of Defendant's conduct, Plaintiffs are entitled to an award of statutory damages pursuant to *15 U.S.C. §1692k*.

106.    As a result of Defendant's conduct, Plaintiffs are entitled to an award of costs and attorney fees pursuant to *15 U.S.C. §1692k*.

## VII.    CLASS ALLEGATIONS AS TO COUNTS I AND II

107.    Plaintiffs re-allege each previous allegation as if fully established herein.

108.    Plaintiffs bring Count I and Count II of this action on behalf of themselves and on behalf of a class of all other persons similarly situated pursuant to Fed. R. Civ. P. 23.

109.    The Class consists of: (a) all natural persons; (b) who have received a Letter from Defendant Luna similar in form and content to the February 1 Letter; (c) where such Letter constituted the Initial Communication, and (d) where such Letter was mailed any time after February 1, 2022.

110.    This action has been brought as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and as such complies with the following:

    i.    The class members are so numerous that joinder is impracticable;

    ii.    Upon information and belief, based on preliminary discovery, there are more than 1000 members of the class as defined herein;

    iii.    There are questions of law and facts common to all class members, which predominate over any question that affect only individual class members. The predominant questions are:

        a.    Whether Defendant Luna's conduct, described herein, violated Sections 1692e and Section 1692g of the FDCPA; and

    b.  The liability of Defendant Luna for the alleged violations of the FDCPA which are described herein;

    c.  Whether the February 1 Letter is a form letter.

    d.  Whether the February 1 Letter violates the FDCPA; and

    e.  The liability of Defendant Luna for the action of sending the February 1 Letter.

iv.  Plaintiffs' claims are typical of the claims of the class members.  All are based on the same factual and legal theories; to wit, all plaintiffs received the same identical letter and based on the same identical legal theories allege identical violations of the FDCPA;

v.  Plaintiffs will fairly and adequately represent and protect the interests of each class member.  Plaintiffs have retained counsel experienced in consumer bankruptcy matters, consumer credit matters, and debt collection abuse cases.

vi.  A class action is superior to other alternative methods of adjudicating this dispute, in that:

    a.  Individual cases are not economically feasible,

    b.  Many consumers may not realize their rights are violated, and

    c.  Congress prescribed class actions as a principal enforcement mechanism under the FDCPA.

**VIII.  <u>COUNT III – VIOLATION OF *15 U.S.C. § 1692e(2), (10)*</u>**

111.  Plaintiffs re-allege each and every previous allegation as if fully established herein.

112.    Plaintiffs bring Count III on their own behalf and on behalf of others similarly situated.

113.    Section 1692e, in its pertinent part, states:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
…
(2) The false representation of—
     (A) **the character, amount, or legal status of any debt**…
(3) …………………………………………………………...;
(4) …………………………………………….…………..;
(5) …………………………………………………………;
(6) …………………………………………………………;
(7) …………………………………….…………………..;
(8) …………………………………….…………………..;
(9) …………………………………………………………;
(10) The **use of any false representation** or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

114.    Under Section 1692e, a debt collector may not falsely represent "the character, amount, or legal status of any debt".

115.    Section 1692e also prohibits the "use [of] any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer". 15 U.S.C. §§ 1692e(10).

116.    "The FDCPA is 'a strict liability statue' and, thus, there is no need for a plaintiff to plead or prove that a debt collector's misrepresentation of a debt obligation was intentional."  *See*, Vangorden v. Second Round, Ltd. P'ship, 897 F.3d 433, 437-38(2d Cir. 2018) (citing Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP, 875 F.3d 128, 134 (2d Cir. 2017)). "The strict liability

standard applies to § 1692e claims." See, <u>Wahl v. Midland Credit Mgmt., Inc</u>., 556 F.3d 643, 646 (7th Cir. 2009).

117.    Therefore, a "[d]ebt collectors may not make false claims, period." *See*, <u>Randolph v. IMBS, Inc.</u>, 368 F.3d 726, 730 (7th Cir. 2004); see also, <u>Valle v. Westhill Exch., LLC</u>, GJH-19-2304 (D. Md. Mar. 24, 2021) ("[A] debt collector may violate §1692e even if it unintentionally makes a false statement."); <u>Turner v. J.V.D.B. & Assocs., Inc.</u>, 330 F.3d 991, 995 (7th Cir 2003) ("[U]nder §1692e ignorance is no excuse."); <u>Russell v. Equifax A.R.S.</u>, 74 F.3d 30, 33 (2d Cir. 1996).

118.    The February 1 Letter's allegation, as to the Bankruptcy Accounts, that "[a]ll of the terms and conditions of the account remain in full force and effect and now are enforceable by the New Lender", was false because due to the Discharge provisions of the Bankruptcy Code, collection of the now discharged Bankruptcy Accounts of Plaintiff Soto, Plaintiff Nieves, and/or Plaintiff Maldonado was prohibited.

119.    Similarly, the February 1 Letters advised to Plaintiffs that "[a]ll future payments of interest, principal, or other charges payable by you under the Personal Loan shall be made payable to the Servicer and shall be sent to the Servicer…" was also false because, due to the Discharge Order neither Plaintiff Soto, Plaintiff Nieves, nor Plaintiff Maldonado owed any monies nor were any of the Plaintiffs obligated to make any payments.

120.    Defendant violated Section 1692e(2)(A) because it incorporated a false representation and a mischaracterization of the nature and legal status of the pre-petition debt by attempting to collect from Plaintiffs a debt that was Discharged on the Bankruptcy Case; thus, was neither due nor owing nor demandable.

121.    Defendant's false, misleading, and deceptive representations in the February 1 Letter also violated 15 U.S.C. § 1692e(10).

122.    Defendant violated Section 1692e(10) by using false representations and/or deceptive means to collect, or attempt to collect, the Consumer Debt. Specifically, Defendant falsely represented in the February 1 Letter, amongst others, that: (a) the terms and conditions of the now discharged Bankruptcy Account were "in full force and effect;" (b) that the now discharged Bankruptcy Account was "now enforceable;" (c) that all future payments of interest, principal or other charges were "payable by under the Personal Loan shall be made to the Servicer."

123.    The result of Defendant Luna's violation of Section 1692e, lead Plaintiffs to mistakenly believe that they needed to pay the now discharged Bankruptcy Account.

124.    As a result of Defendant's violation of Section 1692e, Plaintiffs suffered tangible and intangible injuries.

125.    Amongst Plaintiffs' tangible injuries, Plaintiffs: (a) spent time and money to engage counsel and to review the allegations in the collection letter; (b) opportunity costs related to time missed from work due to the allegations in the collection letter; (c) severe emotional harm that resulted from Plaintiffs' belief that notwithstanding their investment in counsel and bankruptcy filing, they were still subject to the impending financial and legal harm threatened in the collection letters; as well as (d) as physical ailments like headaches, and others resulting from the allegations in the Demand Letter.

126.    Additionally, Plaintiffs suffered intangible injuries. Amongst others, the collection letters, in violation of the FDCPA, exposed Plaintiffs to the risk of paying a debt which they did not owe; precisely, the type of harm Congress intended to prevent via the FDCPA.

127.    As a result of Defendant's conduct, Plaintiffs are entitled to an award of statutory damages pursuant to 15 U.S.C. §1692k.

128.    As a result of Defendant's conduct, Plaintiffs are entitled to an award of costs and attorney fees pursuant to 15 U.S.C. §1692k.

## IX.    CLASS ALLEGATIONS AS TO COUNT III

129.    Plaintiffs re-allege each previous allegation as if fully established herein.

130.    Plaintiffs bring Count III on behalf of themselves and on behalf of a class of all other persons similarly situated pursuant to Fed. R. Civ. P. 23.

131.    The Class consists of: (a) all natural persons; (b) who filed a bankruptcy case in the Bankruptcy Court for the District of Puerto Rico; (c) in which a debt later acquired by Defendant Luna was discharged by a Discharge Order entered by the Bankruptcy Court; (d) in which Defendant Luna bought the discharged debt; (e) where a Letter, in the form and content similar to the February 1 letter, was mailed following the Discharge Order; and (f) where the Letter was mailed after February 1, 2022.

132.    This action has been brought as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and as such complies with the following:

      j.    The class members are so numerous that joinder is impracticable;

      vii.    On information and belief, based on preliminary discovery, there are more than 200 members of the class as defined herein;

      viii.    There are questions of law and facts common to all class members, which predominate over any question that affect only individual class members. The predominant questions are:

a.  Whether Defendant Luna's conduct, as described herein, violated Section 1692e of the FDCPA, and

b.  The liability of Defendant Luna for the alleged violations of the FDCPA described herein.

c.  Whether the February 1 Letter is a form letter.

d.  Whether the February 1 Letter violated the FDCPA; and

e.  The liability of Defendant Luna for the action of sending the February 1 Letter.

ix.  Plaintiffs' claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

x.  Plaintiffs will fairly and adequately represent and protect the interests of each class member.  Plaintiffs have retained counsel experienced in consumer bankruptcy matters, consumer credit matters, and debt collection abuse cases.

xi.  A class action is superior to other alternative methods of adjudicating this dispute, in that:

a.  Individual cases are not economically feasible,

b.  Many consumers may not realize their rights are violated, and

c.  Congress prescribed class actions as a principal enforcement mechanism under the FDCPA.

## X.    COUNT IV - VIOLATIONS OF THE DISCHARGE INJUNCTION AND CIVIL CONTEMPT

133.    Plaintiffs re-allege each and every previous allegation as if fully established herein.

134.    11 U.S.C. § 524(a)(2) provides that:

[A discharge in a case under this title—] operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

135.    In Taggart v. Lorenzen, the Supreme Court entered a unanimous opinion as to the legal standard for holding a creditor in civil contempt when it violated a discharge order. Specifically, the Supreme Court ruled that "a court may hold a creditor in civil contempt for violating a discharge order if there is not a fair ground of doubt as to whether the creditor's conduct might be lawful under the discharge order". Taggart v. Lorenzen, 139 S. Ct. 1795 (2019).

136.    In Bessette v. Avco Financial, 230 F.3d 439 (1st Cir. 2000), Judge Torruellas, writing for the First Circuit, held that a federal court, such as this District Court, has standing to adjudicate a violation of Discharge Order contempt, as a civil action and/or as a class action.  *See*, Bassette, *supra*.

137.    Notwithstanding actual and constructive notice of the Discharge Order, Defendant acted in defiance of the Discharge Order by continuing its collection efforts against Plaintiffs over their respective Bankruptcy Accounts.

138.    The Discharge Order Notice mailed to all creditors, including Defendant, included the following warning: "**This order means that no one may make any attempt to collect a discharged debt from the debtors personally**. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. **Creditors who violate this order can be required to pay debtors damages and attorney's fees**". *(Our Emphasis Added).*

139.    Amongst others, but more specifically, after the Discharge Order, and notwithstanding actual and constructive notice of the Discharge Order, Defendant sent the

February 1 Letter to the Plaintiffs demanding that payments on the now discharged Bankruptcy Accounts.

140.    The February 1 Letter falsely informed Plaintiffs that the now discharged Bankruptcy Accounts "remain[ed] in full force and effect and are now enforceable by the New Lender".

141.    The February 1 Letter requested Plaintiffs send "[a]ll future payments of interest, principal, or other charges payable by you under the Personal Loan shall be made payable to the Servicer and shall be sent to the Servicer…"

142.    Amongst others, but more specifically, after the Discharge Order, and notwithstanding actual and constructive notice of the Discharge Order, Defendant continued its collection efforts against Plaintiffs for the discharged debt by buying the Bankruptcy Accounts from Santander with premeditation and intent of seeking to collect on discharged debts.

143.    Upon reason and belief, it is part of Defendant pattern and practice to purchase debts, at steep discounts, which have been discharged by a Bankruptcy Court Discharge Order in order to collect on such discharged debts.

144.    This pattern and practice is part of Defendant's business model to maximize profits at the expense of former Debtors' right to a fresh start.

145.    Prior to sending the February 1 Letter, Defendant conducted a "bankruptcy scrub" or other similar search to identify if the Bankruptcy Accounts were subject to or the object of a pending or prior bankruptcy.

146.    As a result of such bankruptcy scrub, or similar search, Defendant had actual or constructive knowledge of the bankruptcy petition and had actual or constructive knowledge of the Discharge Order in the respective cases of the Plaintiffs.

147.    Because Defendant had actual or constructive knowledge, Defendant acted in defiance with premeditation, willfulness, and malice with respect to the Discharge Order.

148.    These acts, after the Discharge Order was issued, constitutes an outrageous disregard to Plaintiffs' "fresh start;" which is the basic promise of the Bankruptcy Code to an honest but unfortunate Debtor who achieves an Order of Discharge under the provision of the Bankruptcy Code. The actions perpetrated by the Defendant, its employee(s), agent(s), representative(s), legal or otherwise, are clear and willful violation of the Bankruptcy Code and the Discharge Order issued by the Bankruptcy Honorable Court.

149.    The Defendant's conduct in this case has gravely frustrated the Discharge Order entered by the Bankruptcy Court and has caused the Plaintiffs unwarranted and unnecessary losses of time, efforts, and expenses in seeking to enforce the "fresh start" rights guaranteed by the Bankruptcy Code.

150.    Defendants' behavior after the Discharge Order went into effect has been intentional, egregious and extreme.

151.    The aforementioned acts perpetrated by Defendant, caused the Plaintiffs to be afraid and fearful of the next possible act to be committed by the Defendant against them.

152.    As a direct and proximate cause of the aforementioned acts perpetrated by Defendant, Plaintiffs have suffered damages in the form of tension, headaches, chest pain, upset stomach, shortness of breath, anxiety, upset stomach, severe emotional suffering, mental anguish and other physical and psychological injuries all caused by the deliberate disruption of Plaintiffs' financial rehabilitation efforts.

153.    As a result of Defendant's conduct, Plaintiffs are entitled to an award of costs and attorney fees.

154.    As a result of Defendant's conduct, Plaintiffs are entitled to an award of actual damages, including physical damages, economic losses, emotional suffering, mental anguish and the deliberate disruption of Plaintiffs' financial rehabilitation efforts.

155.    Defendant's intentional and deliberate actions were intentional or, at a minimum, in reckless disregard of the Honorable Bankruptcy Court's orders, namely the Discharge Order, for which punitive damages are warranted.

156.    In addition, Defendant is responsible for Plaintiff's attorney fees, costs, and expenses.

## XI.    CLASS ALLEGATIONS AS TO COUNT IV

157.    Plaintiffs re-allege each previous allegation as if fully established herein.

158.    Plaintiffs bring this action on behalf of themselves and on behalf of a class of all other persons similarly situated pursuant to Fed. R. Civ. P. 23.

159.    The Class consists of: (a) all natural persons; (b) who filed a bankruptcy case in the Bankruptcy Court for the District of Puerto Rico, noticed a creditor of such case, and listed such creditor as the holder of the claim; (c) where such listed claim was discharged by a Discharge Order entered by the Bankruptcy Court; (d) in which Defendant bought the discharged claim from the bankruptcy listed creditor, and (e) in which Defendant attempted to collect form Plaintiffs.

160.    This action has been brought as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and as such complies with the following:

      k.    The class members are so numerous that joinder is impracticable;

      xii.    On information and belief, based on preliminary discovery, there are more than 200 members of the class as defined herein;

xiii.   There are questions of law and facts common to all class members, which predominate over any question that affect only individual class members. The predominant questions are:

    a.   Whether Defendant Luna, and the conduct described herein, violated the Discharge Injunction pursuant to 11 U.S.C. § 524(a); and

    b.   The liability of Defendant Luna for the alleged violations of the Discharge Injunction described herein, and

    c.   The liability of Defendant Luna for the action of attempting to collect on the Discharged debts.

xiv.   Plaintiffs' claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

xv.   Plaintiffs will fairly and adequate represent and protect the interests of each class member.  Plaintiffs have retained counsel experienced in consumer bankruptcy matters, consumer credit matters, and debt collection abuse cases.

xvi.   A class action is superior to other alternative methods of adjudicating this dispute, in that:

    a.   Individual cases are not economically feasible, and

    b.   Many consumers may not realize their rights are violated, and

**WHEREFORE**, in view of the foregoing, Plaintiffs respectfully request from this Honorable Court to enter a judgment in favor of the Plaintiffs and the class members, granting Plaintiffs and the class members the remedies requested in this Complaint and such other remedies as may be fair and equitable.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 30th day of January 2023.

**THE BATISTA LAW GROUP, PSC.**
P.O. Box 191059
San Juan, PR. 00919
Telephone: (787) 620-2856
Facsimile: (787) 777-1589

/s/ Jesus E. Batista Sánchez
Jesus E. Batista Sánchez, Esq.
USDC-PR No. 227014
E-mail:  jeb@batistasanchez.com

/s/ William Rivera Vélez
William Rivera Vélez, Esq.
USDC-PR No. 229408
E-mail:  wrv@batistasanchez.com

/s/ Carlos A. Ortiz Morales
Carlos A. Ortiz Morales, Esq.
USDC-PR No. 120402
E-mail: comlaw@gmail.com